IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DELORES V. WIGGER, | ) | |
| | ) | No. 2:15-cv-01122-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CVS PHARMACY, INC.; CVS | ) | |
| CAREMARK; and CVS RX SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 99, that the court grant defendants CVS Pharmacy, Inc., CVS Caremark, and CVS Rx Services, Inc.'s (collectively "CVS") motion for summary judgment, ECF No. 90. For the reasons set forth below, the court adopts the R&R and grants CVS's motion for summary judgment.

**I. BACKGROUND**

Plaintiff Delores V. Wigger brings this employment discrimination action against defendants for a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213, ("ADA"), which allegedly occurred during her employment and subsequent termination by defendants.[1] Plaintiff seeks damages "for back pay, front pay, emotional distress, humiliation and embarrassment, attorneys' fees and costs, pre-judgment interest, post-judgment interest, and punitive damages." Am. Compl. ¶ 79.

---

[1] In the amended complaint, plaintiff asserts three causes of action; however, because the parties stipulated to dismissal with prejudice of the first and third causes of action for a violation of the Age Discrimination in Employment Act and wrongful discharge in violation of public policy, ECF No. 86, only the ADA claim remains.

1

## A. Factual Allegations

In short and viewing the facts in the light most favorable to the non-moving party, plaintiff began employment with defendants in 1999 as a pharmacist at Store Number 4395 located at 10599 Dorchester Road in Summerville, South Carolina. Pl.'s Dep. 20:3–21:11; 27:22–28:2; 29:9–13. In 2010, plaintiff became the pharmacist-in-charge ("PIC") at the same store. Id. at 30:13–15.

In 2011, plaintiff completed a mid-year self-assessment in which she determined that she needed improvement in several employment duties, such as achieving pharmacy business metrics, managing inventory, and more broadly, delivering results. ECF No. 90-2 at 50–54. Plaintiff's supervisor at the time, Jeffrey Holcombe, reviewed the evaluation with her and likewise determined she needed improvement in several broad categories, such as leading and developing her team, maintaining business and service foundations, managing workflow and quality assurance, and focusing on customers and the market. Id. at 53–54; Pl.'s Dep. 129:15–133:4. In June 2012, Darlene Molett ("Molett") replaced Jeffrey Holcombe as plaintiff's supervisor. Molett Dep. 13:4–5, ECF No. 90-4. Molett found that plaintiff still needed improvement, and plaintiff signed a document stating that she needed to improve in several areas. Pl.'s Dep. 136:10–139:6; ECF No. 90-2 at 56. Subsequently, plaintiff was written up once per month for deficient performance in September, October, and November 2012. ECF No. 90-2 at 57–62; Defs.' Br. in Supp. of Mot. for Summ. J. 6–7, ECF No. 90-1; Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 8, ECF No. 91. With respect to the November 2012 write-up, Molett told plaintiff that this was her final job warning. Pl.'s Dep. 168:20–22.

On December 27, 2012, plaintiff saw psychiatrist Dr. Ricardo Fermo ("Dr. Fermo"), who diagnosed her with depression[2] and placed her on leave from work. Pl.'s Dep. 168:23–169:7; Fermo Dep. 70:4–19, ECF No. 90-7. Molett and Kevin Elliott ("Elliott"), who supervised Molett, were informed that plaintiff was on leave. Molett Dep. 80:6–19; Elliott Dep. 95:10–19, ECF No. 90-6. On March 7, 2013, Dr. Fermo released plaintiff to work with no restrictions. ECF No. 90-7 at 10; Pl.'s Dep. 35:16–19.

Upon her return, plaintiff was offered a choice between her prior position at Store Number 4395 and a position as staff pharmacist at Store Number 563, located at 1515 Old Trolley Road, Summerville, South Carolina, with the same pay. Pl.'s Dep. 30:16–31:8; 33:3–16. Molett told plaintiff she had the right to resume her previous position at Store Number 4395 if plaintiff so desired but that Molett wanted to keep the new PIC who took over during plaintiff's leave in that position, and plaintiff agreed "that was fine" because she did not need any additional stress. Pl.'s Dep. 30:25–31:8; 31:17–32:13. In March 2013, plaintiff began working at Store Number 563 where Millie Fippen was the PIC. Pl.'s Dep. 34:15–35:2. Shortly thereafter, plaintiff told Molett and Elliott that she was unhappy working at Store Number 563 because of a stressful environment and her negative relationship with Fippen. Molett Dep. 93:1–94:7; Elliott Dep. 102:3–22. Plaintiff also told Molett and Elliott that she had taken the three-month leave of absence due to severe anxiety and depression, requesting that they reassign her to the CVS in St. George, South Carolina. Pl.'s Dep. 66:18–67:19. Elliott instructed her to put her request

---

[2] As the R&R correctly points out, plaintiff alleges in the amended complaint that Dr. Fermo diagnosed her with post-traumatic stress disorder ("PTSD"), qualifying her as a disabled individual within the meaning of the ADA, Am. Compl. ¶ 71; however, Dr. Fermo unequivocally testified that he did not diagnose her with PTSD because she did not meet the criteria for such diagnosis. Fermo Dep. 67:22–38:20. Thus, there is no evidence in the record to support plaintiff's alleged diagnosis of PTSD.

3

in writing and to write down at least four other CVS locations where she was willing to work. Pl.'s Dep. 67:5–8. On March 21, 2013, plaintiff handwrote a note[3] stating:

> After returning from leave due to extreme stress disorder I wanted to be in an environment less stressful. Thus, I did not return to my old store. Starting at [Store Number] 563[,] the situation did not appear any better. As I wasn't aware there was an opening at St. George[,] I did not request it but at this time would really appreciate being put there permanently.

ECF No. 93-2. The note lists other options as Store Numbers 7537, 4204, and 7305. Id. None of the requested stores had openings available. Molett Dep. 96:1–25; Elliott Dep. 105:17–107:16. CVS had a policy in effect addressing requests for accommodation, which applied to employees requesting transfer due to anxiety. ECF No. 93-3; ECF No. 91-4 at 52:4–8, 54:9–18. The policy provided that when a request for a reasonable accommodation is made to a supervisor, the supervisor completes a reasonable accommodation form in order to assess the employee's situation. ECF No. 91-4 at 52:9–16. Alternatively, an employee may call human resources, who then processes the form. ECF No. 91-4 at 52:24–53:4. Either way, human resources resolves the request by reviewing and responding to it.[4] Id. at 55:6–56:25.

Defendants received complaints about plaintiff from customers. In April 2013, an employee at a doctor's office, whom plaintiff called to request a prescription refill,

---

[3] The R&R observes that this note was obtained in discovery by plaintiff from CVS, marked confidential by one of the parties, and filed as a court-only exhibit not accessible by the public. R&R 4 n.4. The R&R recommends that the note be publicly filed as part of ECF No. 90-6 because it does not contain any information rendering it confidential under the confidentiality order entered in this case, ECF No. 40, and no statute proscribes its disclosure. Id. No party objects to the R&R's recommendation, and the court adopts and incorporates it into this Order.

[4] The R&R notes that defendants failed to adduce evidence that human resources or one of plaintiff's supervisors completed a reasonable accommodation form according to its policy specifications. R&R 5. Plaintiff alleges that human resources failed to respond to her request to be transferred because of extreme stress, and defendants have not brought forth evidence to the contrary.

4

complained to defendants that she was offended and embarrassed by plaintiff's condescending attitude. ECF No. 90-4 at 32. In the same month, defendants received another complaint that plaintiff was rude to and dismissive of a customer, causing that customer to fill his wife's prescription at Publix instead and vow not to return. Id. at 33–34. In May 2013, defendants received a handwritten letter from a customer who stated that she had switched from Store Number 4395 to 563 because of plaintiff's rudeness and bad attitude, and was dismayed that plaintiff now worked at Store Number 563. Id. at 35–36. Defendants also received several complaints about plaintiff from Fippen, who requested that plaintiff be moved to another store because she was unfit for service and created discord among employees. ECF No. 93-4.

On May 13, 2013, Molett and Elliott placed plaintiff on an "Individual Development Plan" ("IDP"), which provided seven areas where they would monitor plaintiff's improvement and provide corrective action. ECF No. 90-2 at 63–84; Pl.'s Dep. 182:21–188:7; Molett Dep. 72:1–13. Once per month, plaintiff met with Molett to review her progress on the IDP goals. Pl.'s Dep. 194:18–195:17. Between May and August 2013, plaintiff did not meet her goals. ECF No. 90-2 at 63–84; Pl.'s Dep. 194:16–195:17, 201:24–205:19, 205:20–213:1. Defendants' problems with plaintiff at Store Number 563 were similar to the previous problems dating back to 2012 at Store Number 4395. Pl.'s Dep. 212:22–213:25. As a result of her August 2013 IDP review—wherein Molett writes "[o]verall there has been no consistent improvements with overall performance leading to unacceptable results with service, [key performance metric], and

overall SOS[5] results[,]" ECF No. 90-2 at 84—plaintiff's employment was terminated. Pl.'s Dep. 214:6–9.

B.     **Procedural History**

The R&R recommends that the court grant defendants' motion for summary judgment and dismiss the case. Plaintiff filed timely objections to the R&R, ECF No. 101, to which defendants filed a response, ECF No. 102. The matter is now ripe for the court's review.

## II. STANDARDS OF REVIEW

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270–71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the evidence

---

[5] SOS refers to "Stores Own Sales Scorecard" that CVS pharmacists "create in order to see improvements so they could decide what they wanted to work on and what steps they were going to take to make improvements." Molett Dep. 72:8–13.

6

presented could lead a reasonable fact finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The party moving for summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718–19 (citing Anderson, 477 U.S. at 247–48). "A mere scintilla of evidence supporting the [non-moving party's] case is insufficient" to defeat a motion for summary judgment. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 256 (noting that a non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial").

### III. DISCUSSION

Plaintiff lists three objections to the R&R, asserting that the magistrate judge erroneously held that plaintiff has not made a prima facie case under the ADA by failing to: (1) show that she fulfilled defendants' legitimate expectations when she was terminated; (2) present evidence raising a reasonable inference of unlawful discrimination; and (3) establish that she could perform the essential functions of her employment position with the reasonable accommodation. Pl.'s Objs. 1, 16, 18, ECF No. 101. The first two objections address whether there is sufficient evidence to support an

ADA claim for unlawful termination, and the third addresses whether there is the same for failure to accommodate. The court examines each objection in turn.

A.     **Wrongful Discharge in Violation of ADA**

The court uses the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which "establishes a three-step proof scheme under which the burden of evidentiary production is shifted back and forth between the plaintiff and defendant; however, the ultimate burden of persuasion never shifts from the plaintiff to prove intentional unlawful discrimination." Chauncey v. Life Cycle Eng'g, Inc., No. 2:12-cv-968-DCN, 2013 WL 5468237, at *8 (D.S.C. Sept. 30, 2013) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 456 n.2 (4th Cir. 1989)). Under this framework, plaintiff "must first establish a 'prima facie case of discrimination.'" Id. (quoting Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010)). If plaintiff establishes a prima facie case, "the burden of production shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action." Id. (citing McDonnell Douglas, 411 U.S. at 802). "Finally, if the defendant meets this burden, the plaintiff must then prove that the defendant's proffered reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. at *9 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

A plaintiff makes a prima facie ADA claim for wrongful termination sufficient to withstand summary judgment by providing evidence demonstrating that: (1) she was a qualified individual with a disability; (2) she was discharged (3) she was fulfilling her employer's legitimate expectations at the time of the discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. Reynolds v.

Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citation omitted). "Evidence of all four of these elements is necessary to survive summary judgment." Id. The parties agree that plaintiff was discharged on August 26, 2013, and thus do not dispute the second element. With respect to the first element, the magistrate judge found that there is evidence in the record sufficient to create a genuine issue of material fact as to whether plaintiff was a qualified individual with a disability because of her asserted anxiety, depression, and stress. R&R 9–14. Neither party has articulated an objection to the same, and the court finds no clear error in this finding. Therefore, the court conducts a de novo review only of the third and fourth elements.

1. **Whether plaintiff fails to show that she fulfilled defendants' legitimate expectations when she was terminated**

To satisfy this third element, plaintiff must "present . . . probative evidence that [she] was, in fact, performing at a level that met [her] employer's legitimate expectations." Hill v. Se. Freight Lines, Inc., 877 F. Supp. 2d 375, 391 (M.D.N.C. 2012), aff'd, 523 F. App'x 213 (4th Cir. 2013). Legitimate means that the expectations "cannot be a sham designed to hide the employer's discriminatory purpose." Id. at 385 (citation omitted). In determining whether plaintiff was performing at a level fulfilling defendants' legitimate expectations, the court looks through "the perception of the decision maker[,]" not plaintiff's self-assessment. Id. (citations omitted).

As stated, plaintiff has the evidentiary burden of showing that she was performing at a level that met defendants' legitimate expectations at the time of her termination. Chauncey, 2013 WL 5468237 at *8. Her objections to the R&R fail to point to any evidence showing that she was performing at a level that met defendants' legitimate expectations. Plaintiff argues that summary judgment should be denied because (1)

9

"there is no credible evidence that [p]laintiff was experiencing performance problems in 2011 sufficient to support a finding that she was not meeting the legitimate expectations of her employer[,]" Pl.'s Objs. 4; (2) her evidence "casts serious doubt as to the credibility of Molett" regarding plaintiff's write-ups in September, October, and November 2012, id. at 5; (3) her co-worker at Store Number 4395 testified that plaintiff performed her job well, id. at 6; and (4) she "offered significant evidence" of "the working environment at Store Number 365[,]" id. at 7; however, these do not relate to the events that transpired at the time of her termination in August 2013—her performance problems in 2011 and 2012 are irrelevant to her prima facie claim, which looks to whether she was fulfilling her employer's legitimate expectations "at the time of discharge[.]" See Reynolds, 701 F.3d at 150.

Moreover, plaintiff's first argument is overcome by the evidence adduced by defendants showing that plaintiff was not fulfilling defendants' legitimate expectations at the time of her discharge. In particular, there is undisputed proof that in the three months prior to her termination plaintiff was on a three-month IDP, and the monthly IDP reports tracked plaintiff's failure to meet specified goals with corrective action. ECF No. 90-2 at 63–84. Furthermore, plaintiff's second and fourth arguments are irrelevant because she still must point to evidence that she was performing at the requisite level, regardless of Molett's credibility and the working environment at Store Number 365. Finally, with respect to her third argument, the court looks through "the perception of the decision maker[,]" and not a co-worker. Hill, 877 F. Supp. 2d at 385 (citations omitted). Accordingly, the court finds that plaintiff fails to present probative evidence that she was

performing at defendants' legitimate expectations at the time of her discharge; therefore, her ADA claim fails to survive summary judgment.

### 2. Whether plaintiff fails to present evidence raising a reasonable inference of unlawful discrimination

Assuming arguendo that plaintiff satisfied the third element, the court nonetheless finds that she fails to satisfy the fourth element of an ADA claim. "To raise a reasonable inference of unlawful discrimination, [a plaintiff] must provide more than speculative evidence, generalities, or gut feelings." Olliff v. Potter, Civil Action No. 3:08cv049, 2008 WL 4681986, at *4 (E.D. Va. Oct. 21, 2008) (citing Bryant v. Bell Atl., Inc., 288 F.3d 124, 134–35 (4th Cir. 2002)). "'[U]nsubstantiated allegations and bald assertions' of discrimination are not adequate to defeat summary judgment." Id. (quoting Evans v. Techs. App. & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996)). Such an inference must raise a "reasonable probability," and not simply a "mere possibility," that her discharge was discriminatory. Sutton v. Vilsack, No. 2:12-cv-01386-DCN, 2014 WL 4199163, at * 5 (D.S.C. Aug. 20, 2014).

Plaintiff contends that there is a reasonable inference of unlawful discrimination because she was fired for store metrics that "were lagging well behind before she was assigned [to Store Number 563]" and because Molett purposefully made plaintiff work with Fippen to stress her out so she would not succeed. Pl.'s Objs. 17. Because plaintiff fails to adduce evidence substantiating her allegations that store metrics were lagging or that Molett puposefully placed plaintiff in a stressful employment in order to terminate her because of her disability, the court finds that plaintiff fails to raise a reasonable inference of unlawful discrimination.

Even if the court found that plaintiff makes a prima facie ADA claim and the burden of production shifted to defendants "to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action[,]" Chauncey, 2013 WL 5468237, at *8, defendants have carried this burden by producing evidence that plaintiff's performance was deficient, she received write-ups and was placed on an IDP to correct her deficiency, and the store received complaints from customers. See Morris v. Sheetz Inc., No. 5:13-cv-00095, 2015 WL 1925457, at *1 (W.D. Va. Apr. 28, 2015) (holding that evidence set forth by employer-defendant was "overwhelming" when demonstrating that employer was not satisfied with plaintiff's job performance, plaintiff received disciplinary notice and was given an action plan detailing specific areas of improvement, and customers complained). Upon such a showing, the burden shifts back to plaintiff to then prove that defendants' proffered reasons "were not its true reasons, but were a pretext for discrimination." Chauncey, 2013 WL 5468237, at *9 (citation omitted). However, the magistrate judge found that plaintiff has not produced evidence showing that defendants' explanation for terminating her employment was pretextual, R&R 20, and the plaintiff did not object to the same. Accordingly, assuming a prima facie ADA claim, plaintiff does not carry her burden of production because she fails to adduce evidence that defendants' proffered reasons for terminating her employment were pretextual.

**B.  Failure to Accommodate in Violation of ADA: Whether plaintiff fails to establish that she could perform the essential functions of her employment position with the reasonable accommodation**

An employer violates the ADA when it fails to make a reasonable accommodation for a qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); Rhoads v.

F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001). To establish a prima facie failure-to-accommodate claim, plaintiff must show that: (1) she was an individual who had a disability within the meaning of the ADA; (2) defendants knew of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) defendants refused to make such accommodations. Id. (citation omitted).

As previously stated, with respect to the first element, the magistrate judge found that there is evidence in the record sufficient to create a genuine issue of material fact as to whether plaintiff was a qualified individual with a disability because of her asserted anxiety, depression, and stress. R&R 9–14. With respect to the second element, the magistrate judge also found that there is evidence in the record that plaintiff told Molett and Elliott about her putative disability. R&R 21. Neither party has articulated an objection to these findings, and the court finds no clear error in them. With respect to the fourth element, the parties do not dispute that defendants terminated plaintiff's employment while she was still at Store Number 563, and thus defendants never provided an accommodation. Therefore, the court conducts a de novo review of the third element.

The ADA requires an employer to make "reasonable accommodation" for a disabled employee unless the employer can demonstrate that the accommodation "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Accordingly, it "does not require that the employer go out of his way to provide an accommodation for a disabled employee, but only requires that accommodations are reasonable." Schneider v. Giant of Md., LLC, 389 F. App'x 263, 271 (4th Cir. 2010) (citation omitted) (per curiam). The Fourth Circuit has held that "the ADA does not require reassignment 'when it would mandate that the employer bump

another employee out of a particular position.'" Id. (quoting E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001)). "An employer is not required to violate another employee's rights in favor of an employee with a disability in order to give the disabled employee a reasonable accommodation." Id. (citing Sara Lee Corp., 237 F.3d at 353–54). With respect to depression, an employer's obligation under the ADA to provide a reasonable accommodation does not extend "to providing an aggravation-free environment." Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 728 (8th Cir. 1999); see also Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998) (holding that it is "wholly impractical" to require an employer to transfer an employee to another department "whenever he becomes stressed out by a coworker or supervisor").

Defendants have submitted evidence that there were no positions available for the other CVS locations that plaintiff requested, and plaintiff has not shown anything to the contrary. To accommodate plaintiff in a position at a store she requested would have required defendants to bump another employee out of a pharmacist position. Because such accommodation is not reasonable as a matter of law, the court finds that plaintiff fails to satisfy the third element of her failure-to-accommodate claim.

After reviewing plaintiff's objections de novo, the court is not persuaded that the R&R's findings and conclusions were in error. Accordingly, the court adopts the R&R and grants defendants' motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, ECF No. 99, and **GRANTS** defendants' motion for summary judgment, ECF No. 90.

**AND IT IS SO ORDERED**.

_/s/ David C. Norton_
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 27, 2017
Charleston, South Carolina**